**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

JAMES E. KING, SR., et al.                                        **PLAINTIFFS**

v.                                          **Civil Action No.: 1:14-cv-00088-MPM-DAS**

COLE'S POULTRY, LLC, et al.                                    **DEFENDANTS**


<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court on defendant Peco Foods, Inc.'s ("Peco") *Omnibus Motion for Summary Judgment* [185][186]. Plaintiffs filed a response in opposition to the motion [408], to which Peco filed a reply [413]. Upon review of the parties' submissions, along with relevant case law and evidence, the Court is now prepared to rule.

**I.          Factual and Procedural Background**

Cole's Poultry, LLC ("Cole's"), Skeels Poultry, LLC ("Skeels"), and Peco are engaged in broiler chicken operations, utilizing confined chicken facilities in Monroe County, Mississippi, to raise chickens for meat production. Under their arrangement, Peco, an Alabama corporation, supplies the chickens to Cole's and Skeels, who actually operate the Monroe Country facilities. While Cole's and Skeels operate the facilities, Peco maintains an extensive amount of authority over the chicken growing process and the day-to-day operations of the facilities.

This action commenced on July 20, 2011, when fifty-seven[1] residents of Monroe County, Mississippi ("Plaintiffs"), filed their complaint against Cole's, Skeels, and Peco. Plaintiffs filed their suit in the Circuit Court of Monroe County, Mississippi, alleging that the defendants'

---

[1] The Court notes that the parties have stated a different number of plaintiffs in multiple filings with the Court. Multiple plaintiffs have been dismissed and/or substituted throughout the course of the litigation. However, in the initial filing in the Circuit Court of Monroe County, Mississippi, there were fifty-seven plaintiffs.

1

confined chicken facilities located in close proximity to Plaintiffs' homes and properties interfere with their ability to use and enjoy their properties. Specifically, Plaintiffs allege that "[t]he foul, noxious, and potentially dangerous odors emanating from these chicken facilities, as well as millions of flies and other potentially harmful emissions have impaired Plaintiffs' ability to use and enjoy their properties and have caused substantial damage to their quality of life."

Thereafter, on August 3, 2012, Cole's and Skeels both filed for Chapter 12 bankruptcy and subsequently removed this action to the United States Bankruptcy Court for the Northern District of Mississippi (the "Bankruptcy Court"). Each individual plaintiff filed a proof of claim against Cole's and Skeels in that proceeding. However, on October 16, 2013, Plaintiffs voluntarily withdrew their claims, stating their intent to pursue claims solely against Peco. On November 15, 2013, the Bankruptcy Court granted Plaintiffs' motion to voluntarily dismiss Cole's and Skeels from the adversary proceeding. Then, on November 27, 2013, Peco filed an amended notice of removal, asserting diversity jurisdiction as the basis for this Court's jurisdiction. The Bankruptcy Court entered an order abstaining from further action and transferring the case to this Court on January 29, 2014.

Plaintiffs filed their third amended complaint against Peco on January 23, 2015. In their complaint, Plaintiffs allege that Peco owned and retained exclusive control over all aspects of Cole's and Skeels' confined chicken facilities, which were located in close proximity to Plaintiffs' homes and properties in Monroe County, Mississippi. As stated above, Plaintiffs assert that "[t]he foul, noxious, and potentially dangerous odors emanating from these chicken facilities, as well as millions of flies and other potentially harmful emissions, have impaired Plaintiffs' ability to use and enjoy their properties and have caused substantial damage to their quality of life." Plaintiffs' complaint includes causes of action for temporary and continuing

nuisance, negligence, and negligent entrustment. Regarding the nuisance and negligence actions, Plaintiffs assert that Peco is vicariously liable for the actions of Cole's and Skeels. Plaintiffs also argue that Peco is independently liable for these claims because it should have reasonably anticipated these damages and thus owed an independent duty to them. Along with their request for compensatory damages, Plaintiffs request punitive damages, averring that Peco acted with malice and/or reckless disregard for their safety.

In addition to numerous motions for summary judgment as to multiple individual plaintiffs, Peco filed the present omnibus motion for summary judgment, to which Plaintiffs responded in opposition.[2] Peco thereafter filed a reply. Upon review of the parties' submissions, along with relevant case law and evidence, the Court finds that Peco's motion is due to be denied in part and granted in part.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Once the moving party shows there is no genuine dispute as to any material fact, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635

---

[2] The Court notes that portions of Plaintiffs' response have been filed under seal in order to comply with the protective orders previously entered by the Court.

F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

### III.    Discussion

In its motion, Peco makes multiple arguments in favor of summary judgment. Regarding the negligence and nuisance claims under the vicarious liability theory, it asserts that it should not be held vicariously liable because (1) Cole's and Skeels were independent contractors and (2) Plaintiffs' voluntary dismissal of their claims against Cole's and Skeels extinguished their vicarious liability claims. Regarding the direct nuisance action, Peco argues that it is not liable because Cole's and Skeels were solely responsible for the land that caused the alleged nuisance. Regarding the direct negligence action, Peco argues that it is not liable because it did not owe an independent duty to Plaintiffs. Peco also asserts that the negligence claims should be dismissed because the gravamen of Plaintiffs' claims is nuisance. Further, Peco argues that Plaintiffs have not provided sufficient proof that the flies on their property were caused by the operation of the chicken facilities. Peco also argues that Plaintiffs have failed to produce sufficient proof in order to survive summary judgment as to their negligent entrustment claim. Finally, Peco asserts that inasmuch as Plaintiffs' requests for punitive damages are based upon vicarious liability, they should be dismissed because punitive damages are not available on vicarious liability claims under Mississippi law. Regarding the claims not based on vicarious liability, Peco argues that Plaintiffs cannot satisfy the stringent punitive damages burden.

As stated above, the arguments have been fully briefed by the parties. The Court will consider each argument in turn.

### A.    *Vicarious Liability*

*1.    Whether Cole's and Skeels were independent contractors*

One party may be held vicariously liable for another party's torts if there was a master-servant relationship between the parties at the time the tort was committed. *Hill v. City of Horn Lake*, 160 So.3d 671, 676 (Miss. 2015). However, a party may not be held vicariously liable for another's torts if the relationship was merely one of an independent contractor. *Id.; see also Owens v. Thomae*, 759 So.2d 1117, 1122 (Miss. 1999) (citing *Miss. Power Co. v. Brooks*, 309 So.2d 863, 866 (Miss. 1975)) ("The general rule is that the employer of an independent contractor has no vicarious liability for the torts of the independent contractor or for the torts of the independent contractor's employees in the performance of the contract."). Thus, if the Court finds that Cole's and Skeels were independent contractors—rather than employees, Plaintiffs' vicarious liability claims against Peco must be dismissed. Additionally, the Court notes that Plaintiffs bear the burden of proving Peco's vicarious liability at trial and "accordingly bear the burden [at the summary judgment stage] of producing evidence to demonstrate the existence of a disputed material fact on the issue." *Hill*, 160 So.3d at 676 (citing *Webster v. Miss. Publishers Corp.*, 571 So.2d 946, 949 (Miss. 1990)).

The Mississippi Supreme Court has defined an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Texas Co. v. Mills*, 156 So. 866, 869 (Miss. 1934). In contrast, a servant is "a person employed by a master to perform service in his affairs whose physical conduct in the

performance of the service is controlled or is subject to the right to control by the master." *Id.* Thus, "the difference between a master-servant relationship and an independent-contractor relationship is that an employer in a master-servant relationship has control of, or the right to control, the employee in the details of the work." *Hill*, 160 So.3d at 676.

As an initial matter, the Court notes that the language of the contracts between the parties is not dispositive. *McCary v. Wade*, 861 So.2d 358, 363 (Miss. Ct. App. 2003) (quoting *McKee v. Brimmer*, 39 F.3d 94, 98 (5th Cir. 1994) ("[A]n employer will not be allowed to escape liability by drafting a contract which labels its employee an independent contractor, but retains employer-like control over him."). Moreover, "courts are not confined to the terms of the contract, but may look as well to the conduct of the parties." *Heirs and Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist.*, 743 So.2d 311, 318 (Miss. 1999). Here, Peco entered into separate contracts with Cole's and Skeels.[3] The contracts specifically provide that an independent contractor relationship was created between the parties. However, relying on the aforementioned precedent, the parties' own description of their relationship in the contract is not binding on this Court's analysis. Instead, the Mississippi Supreme Court has provided the following factors to be considered in determining whether a person is an independent contractor:

> (1) Whether the principal master has the power to terminate the contract at will;
> (2) whether he has the power to fix the price in payment for the work, or vitally
> controls the manner and time of payment; (3) whether he furnishes the means and
> appliances for the work; (4) whether he has control of the premises; (5) whether
> he furnishes the materials upon which the work is done and receives the output
> thereof, the contractor dealing with no other person in respect to the output; (6)
> whether he has the right to prescribe and furnish the details of the kind and
> character of the work to be done; (7) whether he has the right to supervise and
> inspect the work during the course of the employment; (8) whether he has the

---

[3] The Court notes that the language in the Cole's contract and the Skeels contract is largely identical. Thus, the Court will analyze them together.

right to direct the details of the manner in which the work is to be done; (9) whether he has the right to employ and discharge the subemployees and to fix their compensation; and (10) whether he is obliged to pay the wages of said employee.

*Hill*, 160 So.3d at 677 (citing *Richardson v. APAC-Miss., Inc.*, 631 So.2d 143, 148-49 (Miss. 1994)).

Taking these factors into account, the Court finds that Plaintiffs have provided sufficient evidence to survive summary judgment on this issue. In making this determination, the Court relies largely on the high amount of control Peco possessed over Cole's and Skeels at all stages throughout the chicken growing process. *See Hill*, 160 So.3d at 676 ("In determining whether an employer has the right of control over the employee, the Court should consider what the employer was entitled to do under the contract, as opposed to what the employer actually did."). The contracts specifically provide that Peco representatives shall have the right to enter the chicken facilities to inspect its conditions. The contracts also specify the types of feed, medication, herbicides, pesticides, rodenticides, or insecticides that Cole's or Skeels are permitted to use during the contract period. Moreover, Cole's and Skeels are required to comply with Peco's growing program manual at all times. Like the contracts, the manual grants Peco a large amount of control over all aspects of the growing process. Specifically, the manual provides how Cole's and Skeels must manage and arrange their facilities, including required signs, required lawn care, specifications for the facilities, the minimum temperature in the facilities, position of drinkers and feeders, and restrictions on chemicals and medications that may be in the vicinity of the chicken facilities. In addition, the manual provides that Peco shall determine the date and time for vaccinations to be given to the chickens. Moreover, Cole's and Skeels were required to satisfy Peco's site specifications and building specifications. The amount of control Peco possessed over Cole's and Skeels weighs against classifying them as

independent contractors. *See Richardson*, 631 So.2d at 150 ("[I]t appears that [employer] tried to make [employee] an independent contractor and at the same time retain complete control of the business. This cannot be done under the law.").

In opposition, Peco relies on specific portions of Mississippi cases. For example, Peco quotes *Hill v. City of Horn Lake*, 160 So.3d at 677, wherein the Mississippi Supreme Court held that "the right to inspect, in itself, is not sufficient to trigger a master-servant relationship." However, in the case at bar, the Court notes that its analysis is not based solely upon Peco's right to inspect the premises. Although the right to inspect alone is insufficient, the Court finds that adding it to the multiple other levels of control Peco maintained over Cole's and Skeels weighs in Plaintiffs' favor. Additionally, Peco argues that "Mississippi courts have held that involvement by the principal at the planning stage of the project, including providing specifications and contractually requiring the contractor to satisfy those specifications, does not trigger a master-servant relationship." The Court rejects this argument for the same reason. Although providing required building specifications alone is insufficient, the Court finds that providing specifications in addition to the other large amount of control Peco retained over Plaintiffs' daily operations is sufficient to create an issue of material fact on the issue. The Court finds that Plaintiffs have provided sufficient proof to survive summary judgment on this issue.

2.     *Whether Plaintiffs' voluntary dismissals of Cole's and Skeels extinguished their vicarious liability claims*

As noted above, Peco argues that because Plaintiffs voluntarily dismissed Cole's and Skeels from this action, their vicarious liability claims fail as a matter of law.

In support of its position, Peco relies on the Mississippi Supreme Court's decision in *J & J Timber Co. v. Broome*, 932 So.2d 1 (Miss. 2006), and its progeny. In *J & J Timber*, the plaintiff was the wrongful death beneficiary of two individuals who were killed in an automobile

accident with a log-truck driver.  *Id.* at 2.  The plaintiff ultimately settled with the driver and

agreed to indemnify him against any potential third-party claims.  *Id.* at 2-3.  The plaintiff then

filed a wrongful death action against the logging company, asserting that the company was

vicariously liable for the driver's negligence.  *Id.* at 3.  However, the Mississippi Supreme Court

held that once the plaintiff discharged the driver, "the purely derivative vicarious liability claim

against [the company] became barred."  *Id.* at 6.  The court further opined that "the vicarious

liability claim itself is extinguished when the solely negligent employee is released.  There can

be no assessment of damages against the employer when no action can be brought against the

only negligent party—the employee."  *Id.*

In *Smith v. Taylor Propane, Inc.*, 2009 WL 1851001 (S.D. Miss. June 9, 2009), the

United States District Court for the Southern District of Mississippi applied *J & J Timber* in the

context of a voluntary dismissal with prejudice.  In *Smith*, the plaintiff filed suit in federal court

against an employee and employer based on the employee's negligence in causing an automobile

accident.  *Id.* at *1.  The defendants filed a motion to dismiss, asserting that the plaintiff and

employee were both Mississippi citizens and thus that complete diversity did not exist.  *Id.*  In

response, the plaintiff moved to amend the complaint to remove the employee as a defendant,

and the employee was ultimately dismissed with prejudice.  *Id.*  Upon the employer's motion, the

court then dismissed the plaintiff's vicarious liability claims against the employer based on *J & J

Timber*, holding that the employer could not be held vicariously liable as a matter of law due to

the plaintiff's dismissal and release of the employee.  *Id.* at *2.

Peco also relies on *Cranford v. Morgan Southern Co.*, 333 F. App'x 852 (5th Cir. 2009).

In *Cranford*, the plaintiff voluntarily dismissed her claim against an employee but later moved to

withdraw her motion.  *Id.* at 854.  However, Judge Wingate for the United States District Court

for the Southern District of Mississippi declined to consider the plaintiff's request and, instead, applied *J & J Timber* to the voluntary dismissal. *Id.* On appeal, the Fifth Circuit held the district court erred by failing to consider the plaintiff's request, which made it "unnecessary for us to decide whether the district court correctly dismissed the case based on its understanding of *J & J Timber Co.*" *Id.* at 856.

The Court finds that Peco's reliance on *J & J Timber* and its progeny is misplaced, as each of the aforementioned cases is distinguishable from the case at bar. In this Court's view, the Mississippi Supreme Court's analysis in the original *J & J Timber* case was based largely on the plaintiff's *release* of the employee from all liability. In fact, the court concluded that "the *release* of a tortfeasor operates to bar claims predicated on vicarious liability against the tortfeasor's employer." *J & J Timber Co.*, 932 So.2d at 9 (emphasis added). In contrast, Plaintiffs' voluntary dismissal of Cole's and Skeels from this action was without prejudice. Plaintiffs did not release Cole's and Skeels from liability nor did they settle their claims against those parties. The Court finds that this distinction is critical to the analysis. In addition, Peco's reliance on *Smith* is unpersuasive as the plaintiff's dismissal in that case was with prejudice. Thus, the plaintiff effectively released the employee from liability since a claim could no longer be asserted against him. Moreover, the Court declines to rely on *Cranford* since the Fifth Circuit explicitly stated that it did not decide the case on the *J & J Timber* issue.

Recent precedent from the Southern District of Mississippi supports this Court's position. *McDaniel v. O'Reilly Auto. Stores, Inc.*, 2015 WL 5021810 (S.D. Miss. Aug. 24, 2015). In *McDaniel*, the court declined to extend *J & J Timber* to a case where the plaintiff had voluntarily dismissed the employee without prejudice. *Id.* at *3. In his opinion, Judge Jordan noted that "[u]nder the respondeat superior doctrine, an employer and its employee are jointly and severally

liable for injury caused by the employee's negligence. . . A plaintiff in a respondeat superior action may sue either the employer, the employee, or both." *Id.* at \*1 (citing *Sykes v. Home Health Care Affiliates, Inc.*, 125 So.2d 107, 109 (Miss. 2013)). He later concluded that by voluntarily dismissing the employee without prejudice, the plaintiff "simply restored the common joint-and-several-liability status that would allow him to elect among potential defendants." *Id.* at \*2. Ultimately, the court declined to apply *J & J Timber* in this context, stating that "it does not appear that a Mississippi court has ever applied *J & J Timber* in the absence of a release." *Id.* This Court finds Judge Jordan's reasoning in *McDaniel* persuasive and likewise declines to extend *J & J Timber* to a voluntary dismissal without prejudice.

Peco argues that while the dismissals of Cole's and Skeels' were without prejudice, "[*J & J Timber*] is still applicable to this case because Plaintiffs had 'no action' against Cole's and Skeels after their dismissal due to their Chapter 12 bankruptcies." Peco asserts that since Plaintiffs withdrew their proofs of claim and dismissed Cole's and Skeels in the adversary proceeding in Bankruptcy Court, they became procedurally barred from reasserting claims against Cole's and Skeels under 11 U.S.C. § 502(b)(9). Thus, Peco avers that Plaintiffs' claims have been fully discharged and *J & J Timber* should bar a finding of vicarious liability here.

The Court is not persuaded by Peco's argument. In fact, Judge Jordan addressed a similar issue in *McDaniel*. There, the defendant argued that the statute of limitations had run on the plaintiff's claim against the employee and thus asserted that the plaintiff had "no action" against the employee. *McDaniel*, 2015 WL 5021810, at \*2. The court noted, however, that the expiration of the statute of limitations "does not remedy the lack of a dismissal with prejudice[.]" *Id.* The court cited to a Mississippi case, wherein the Mississippi Court of Appeals held that the expiration of the statute of limitations as to any claim against an employee created "no legal

11

preclusion from litigating [the employee's] alleged negligence as it applies to [the employer's] liability under the doctrine of respondeat superior." *Id.* (citing *Fulgham v. AAA Cooper Transp. Co.*, 134 So.3d 807, 809-10 (Miss. Ct. App. 2014)).

The Court finds the reasoning from *McDaniel* to be well taken and, thus, declines to accept Peco's argument. Regardless of how Peco frames the issue, the expiration of the deadline for filing a proof of claim in the bankruptcy proceeding does not have the same effect as a settlement and release. Therefore, the Court declines to apply *J & J Timber* to this case and consequently rejects Peco's argument that Plaintiffs' vicarious liability claims were extinguished by their voluntary dismissals of Cole's and Skeels.

### B. Direct nuisance and negligence actions

Peco also argues that it is entitled to summary judgment on Plaintiffs' direct actions for nuisance and negligence. The Court notes that Peco raised its arguments for summary judgment in regards to Plaintiffs' direct actions for nuisance and negligence for the first time in its reply. "[T]he court may not consider a new argument made for the first time in a reply." *Russell v. Allianz Life Ins. Co. of N. Am.*, 2014 WL 4545807, at *7 n.5 (N.D. Miss. Sept. 12, 2014) (citing *Cross v. Senior Living Props., LLC*, 2008 WL 495860, at *1 n.1 (N.D. Tex. Feb. 19, 2008)). While Peco's failure to raise these arguments in its initial motion is alone a sufficient basis for their denial, the Court has nevertheless considered Peco's arguments and finds them to be without merit.

Regarding the nuisance action, Peco attempts to shield itself from liability by asserting that Cole's and Skeels solely own the property upon which the facilities are located and are solely responsible for the daily activities. In making this argument, Peco cites to *Bowen v. Flaherty*, 601 So.2d 860 (Miss. 1992). There, the Mississippi Supreme Court held that a

"landowner may not use *his* land so as to unreasonably annoy, inconvenience, or harm others."

*Id.* at 862 (emphasis added).  While this Court agrees with Peco's assertion that a landowner may

not use his land in a manner that interferes with another's use and enjoyment of their land, Peco

has provided no authority that the defendant must have a property interest in surrounding

property in order to be liable for nuisance.

The Mississippi Supreme Court, quoting the Second Restatement, has defined a private

nuisance as follows:

> One is subject to liability for a private nuisance if, but only if, his conduct is a
> legal cause of an invasion of another's interest in the private use and enjoyment of
> land, and the invasion is either
> (a) intentional and unreasonable, or
> (b) unintentional and otherwise actionable under the rules controlling liability for
> negligent or reckless conduct, or for abnormally dangerous conditions or
> activities.

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So.2d 857, 859-60 (Miss.

1988) (citing Restatement (Second) of Torts § 822).  This definition provides no requirement that

the defendant possess a property interest in surrounding land in order to create a nuisance.

Rather, a defendant may be held liable for nuisance so long as his *conduct* causes an invasion

that satisfies the nuisance standard.  Plaintiffs argue that because Peco maintained a significant

amount of control over the daily operations of the facilities, including the authority to cancel the

contracts at any time, it can be held liable for nuisance.  Thus, Plaintiffs have alleged conduct

directly attributable to Peco—failure to cease the operations—that was part of the legal cause of

the invasion of their properties.

In its reply brief, Peco argues that "Plaintiffs cited no authority in their response

supporting their argument that the Court can hold Peco independently liable under Mississippi

law for nuisance under these circumstances."  However, Rule 56 of the Federal Rules of Civil

Procedure provides that summary judgment is proper "if the *movant* shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(a) (emphasis added). Thus, Peco bears the initial burden to show that it is entitled to summary judgment. The only argument Peco makes in this regard is that it did not personally own the property upon which the chicken facilities were located. For the aforementioned reason, the Court finds this argument unpersuasive. Accordingly, the Court finds that Peco has not met its burden for summary judgment as to the nuisance claim.

Regarding the negligence action, Plaintiffs assert that "Peco retains ownership of the chickens at issue and controls or could control every aspect of their raising and care. Additionally, Peco should have anticipated injury to Plaintiffs, especially given the immense public opposition. Thus, a common-law duty of care would apply to Peco given the reasonable foreseeable injury."

It is well settled that to prevail in a negligence action, the plaintiff must show: "(1) the existence of a duty 'to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury'; (2) a breach of that duty; (3) causal relationship between the breach and alleged injury; and (4) injury or damages." *Meena v. Wilburn*, 603 So.2d 866, 870 n.5 (Miss. 1992) (quoting *Burnham v. Tabb*, 508 So.2d 1072, 1074 (Miss. 1987)). "The test is whether the actor being charged with negligence in any circumstance acted as a reasonable and prudent person would have acted under the same or similar circumstances." *Knapp v. Stanford*, 392 So.2d 196, 199 (Miss. 1980).

"While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury." *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 174 (Miss. 1999). "[T]he important component of the existence of [a] duty is that the injury is

reasonably foreseeable." *Rein v. Benchmark Const. Co.*, 865 So.2d 1134, 1143 (Miss. 2004) (quoting *Lyle v. Mladinich*, 584 So.2d 397, 399 (Miss. 1991)). Here, Plaintiffs assert that Peco owed an independent duty of care to them because their injuries were reasonably foreseeable given the inherent nature of the chicken growing operations and the clear public opposition to Peco commencing these operations in the Monroe County area. Plaintiffs have provided the letter that Monroe County citizens sent to Peco before operations commenced expressing their concerns about the effect the facilities would have on their properties. Plaintiffs argue that, given the large amount of control Peco maintained over the entire process, Peco's failure to prevent the alleged injuries was unreasonable—resulting in a breach of its duty.

The Court finds that Plaintiffs have provided sufficient proof to show that Peco owed a duty to them. Taking into account the letter from Monroe County citizens and Peco's knowledge of the broiler chicken operations in general, the Court finds that the alleged injuries were reasonably foreseeable. Moreover, although Plaintiffs will bear the burden at trial to show Peco failed to act reasonably, they need only create an issue of material fact at this stage in the proceedings. Considering the large amount of control Peco maintained over the operations, the general nature of broiler chicken operations, and Peco's awareness of the concerns of the local citizens prior to the commencement of the operations, the Court finds that a genuine issue of material fact exists as to whether Peco acted reasonably. Thus, Peco's request for summary judgment as to this claim is due to be denied.

### C.     *Gravamen of Plaintiffs' claims*

Peco asserts that Plaintiffs' negligence claims should be dismissed because the gravamen of their claims is nuisance. In support of its argument, Peco cites to *Southland Co. v. Aaron*, 72 So.2d 161 (Miss. 1954). There, the Mississippi Supreme Court held:

> It is true that the plaintiffs in their declaration alleged that the poisonous and
> deleterious refuse was negligently discharged into the stream by the defendant
> and its employees. But a careful study of the declaration leads us to the
> conclusion that negligence in the operation of the refinery was not the gravamen
> of the plaintiffs' action. The injury complained of in this case was the operation
> of the refinery in such a manner as to constitute a nuisance.

*Id.* at 166. The Court finds that Peco's reliance on this language is misleading and without merit.

A closer review of *Southland* reveals that it is readily distinguishable from the case at hand. In *Southland*, the plaintiffs did not assert a separate cause of action for negligence; rather, their only cause of action was for nuisance. *Id.* In detailing the facts giving rise to the nuisance claim, the plaintiffs alleged that the defendant negligently operated the refinery in a manner that constituted a nuisance. *Id.* However, because the plaintiffs only asserted claims for nuisance—not negligence—and negligence is not an element of a claim for nuisance, the court found that plaintiffs' allegation of negligence could be treated as surplusage. *Id.* On this issue, the court provided:

> Where negligence is not an element of nuisance, the rules governing the
> sufficiency of complaints for negligence has no application in actions for
> nuisances. Thus, ordinarily, negligence need not be alleged or proved. Moreover,
> even though it is averred that the acts complained of have been done negligently,
> it does not make negligence a material question; and if negligence is alleged, such
> averments may be regarded as surplusage.

*Id.* (citing 66 C.J.S., Nuisances, § 11c, p. 756). Unlike *Southland*, in the present case, Plaintiffs asserted separate causes of action for both nuisance and negligence. Because the *Southland* court's holding is easily distinguishable, the Court finds that it is not binding here.

The Federal Rules of Civil Procedure make clear that a party may maintain multiple alternative or inconsistent theories of recovery for the same harm. FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). The Court thus finds that Plaintiffs are entitled to assert claims for both nuisance and negligence.

Plaintiffs' assertion of a negligence cause of action is not surplusage to the nuisance claim. Rather, it is a separate and distinct cause of action, permissible under the Federal Rules of Civil Procedure. Therefore, the Court declines to strike Plaintiffs' negligence claim.

### D. Failure to provide sufficient proof

As previously mentioned, Peco asserts that Plaintiffs have not provided sufficient proof that the flies on their property were caused by the operation of the chicken facilities. Peco also avers that Plaintiffs' negligent entrustment claims fail due to their lack of proof.

### 1. Proof as to the flies on Plaintiffs' properties

In their complaint, Plaintiffs allege that along with foul and noxious odors emanating from the chicken facilities, there are "millions of flies" which impair Plaintiffs' ability to enjoy their properties. In the present motion, Peco argues that "Plaintiffs' sworn testimony provided inconsistent and contradictory testimony about the number of flies, the types of flies and the frequency with which they experienced flies on their properties." In addition, Peco emphasizes that the report created by Plaintiffs' entomology expert, Dr. Rob Hall, directly contradicts Plaintiffs' testimony concerning the flies. Peco further argues that Plaintiffs have produced no evidence that the flies in the area were caused by the chicken facilities. In response, Plaintiffs dispute that Dr. Hall's findings contradict their testimony, arguing that Dr. Hall "opined that in his expert opinion Plaintiffs' fly complaints were consistent with chicken facilities and there were no alternative sources of flies near Plaintiffs' properties."

At the summary judgment stage, "the district court must not resolve factual disputes by weighing conflicting evidence since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (internal citations omitted). Moreover, "[t]he fact that it may be surmised that the party against whom the

motion is made is unlikely to prevail at the trial is not sufficient to authorize summary judgment against him."  *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).

The Court finds that Peco's argument concerns a factual dispute that cannot properly be decided at this stage in the proceedings.  Peco emphasizes Dr. Hall's testimony wherein he stated that he "saw no flies at the Cole's and Skeels' and/or Plaintiffs' properties on his two visits to the area on January 25 and May 10, 2016, and only found a total of eight (8) house flies in the testing he conducted on Plaintiffs' properties from May 6 through May 9, 2016."  In opposition, Plaintiffs provide Dr. Hall's report in its entirety wherein he states that he believes that the reason he did no observe any flies on the January 25, 2016, visit was due to the cold weather.  Moreover, Plaintiffs provide multiple transcripts of their depositions in which they testify to the presence of the flies and the resulting effect on their ability to use and enjoy their properties.

Although Peco has provided arguments potentially discrediting Plaintiffs' evidence which may very well turn out to be successful at trial, such as its self-serving and contradictory nature, this Court's function at the summary judgment stage is not to decide factual disputes but, rather, simply determine if any exist.  Moreover, "[t]he facts are reviewed drawing all reasonable inferences in favor of the non-moving party."  *Truck Parts and Servs., Inc. v. TruckPro, Inc.*, 2009 WL 586719, at *2 (N.D. Miss. Mar. 5, 2009) (citing *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)).  Taking these principles into account, the Court finds that Plaintiffs have provided sufficient evidence to create a genuine issue of material fact as to the presence of the flies, thus precluding summary judgment on this issue.

Peco additionally asserts that "there is no evidence that any of the flies Plaintiffs have experienced came from Cole's and Skeels, as opposed to the numerous other potential sources for flies in the area, and there is no proof that the fly population has increased above the normal

background level since the Cole's and Skeels facilities became operational."  In opposition, Plaintiffs emphasize the depositions of multiple individual plaintiffs.  For example, plaintiff Stella Dobson specifically testified that the flies have gotten worse since the chicken facilities became operational.  Multiple other plaintiffs testified to this same point in their depositions.

The Court again rejects Peco's argument.  Although Plaintiffs will bear the burden at trial to establish that the flies came from the facilities, they need only show a genuine issue of material fact at this stage in the proceedings.  In the Court's view, Plaintiffs have done so here.

2.      *Proof as to Plaintiffs' negligent entrustment claim*

Peco argues that Plaintiffs have not provided sufficient evidence to support their negligent entrustment claim.

Mississippi courts have held that in order to establish a *prima facie* case for negligent entrustment, the plaintiff must show: (1) that the defendant supplied a third party with the chattel in question for the use of the third party; (2) that the supplier of the chattel knew or should have known that the third party would use the chattel in a manner involving unreasonable risk of harm; and (3) that harm resulted from the use of the chattel.  *Kitchens v. Dirtworks, Inc.*, 50 So.3d 388, 392 (Miss. Ct. App. 2010).

Peco argues that Plaintiffs cannot satisfy the second element of their claim—that Peco knew or should have known that Cole's and Skeels would operate the facilities in a manner involving unreasonable risk of harm.  On this point, Mississippi law is clear that a viable negligent entrustment claim can arise only if the defendant knew or should have known at the time of the initial entrustment that the third party would use it in a manner causing an unreasonable risk of harm.  *Davis v. Seymour*, 868 So.2d 1061, 1064 (Miss. Ct. App. 2004).

Plaintiffs largely base their negligent entrustment claims on three factual allegations: (1) Peco knew that Cole's and Skeels were incompetent to properly operate the facilities; (2) Cole's and Skeels did not have the financial resources to properly manage the facilities; and (3) Peco knew that neither Cole's nor Skeels carried liability insurance on the properties. In opposition to these claims, Peco argues that Plaintiffs have simply provided no evidence that Peco had actual or constructive knowledge of Cole's and Skeels "incompetence" at the time of the initial entrustment. The Court has likewise found no evidence that Peco was aware at the time of its initial entrustment to Cole's and Skeels that those parties were "incompetent" or did not have the financial resources to properly manage the properties.

In their response, Plaintiffs summarily argue that "Cole & Skeels were financially incapable of operating these facilities responsibly as evidence by the fact that both filed bankruptcy. Moreover, Peco knew at the time of contracting with Cole and Skeels that neither had liability insurance, and Peco never required these parties to obtain liability insurance."

The Court finds Plaintiffs' conclusory arguments unpersuasive. The fact that Cole's and Skeels later filed bankruptcy is not legally relevant, as the basis for a negligent entrustment claim concerns the defendant's knowledge at the time of the initial entrustment. Thus, Cole's and Skeels later filing bankruptcy does not affect this analysis. Moreover, Plaintiffs have provided no evidence that Peco knew or should have known at the time of contracting that Cole's and Skeels did not have liability insurance. In addition, even if Peco did have knowledge of their lack of insurance, Plaintiffs have cited no authority that Cole's and Skeels' failure to maintain liability insurance would create a sufficient basis for Peco to know that Cole's and Skeels did not have the financial resources to properly operate the facilities. Ultimately, Plaintiffs have not come forward with evidence that Peco knew or should have known at the time of initial

entrustment that Cole's and Skeels would conduct the businesses in a manner that would cause an unreasonable risk of harm.

Plaintiffs also argue that along with a defendant's initial duty regarding negligent entrustment, a corresponding duty arises when the defendant later learns that the chattel is being misused or is causing harm to others. *See Kitchens*, 50 So.3d at 393 ("Our supreme court has stated the right to control the chattel is the 'paramount requirement for liability.' It logically follows that the right to control imposes a duty to exercise that control if unreasonably risky use is foreseeable.") (internal citation omitted). However, outside of the initial concerned citizen letter—which did not state any specific complaints about Cole's or Skeels as it was drafted before operations commenced, Plaintiffs have provided no specific evidence that Peco had knowledge of the damages being caused by the chicken facilities prior to the filing of this action.

Once Peco showed no genuine dispute of material fact as to this claim, Plaintiffs were required to "come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris*, 635 F.3d at 690. And because Plaintiffs have provided nothing more than conclusory allegations and unsubstantiated assertions, the Court finds that Peco is entitled to summary judgment on this claim. *See Turner*, 476 F.3d at 343.

### E.  *Punitive Damages*

Peco argues that it is entitled to summary judgment on Plaintiffs' request for punitive damages for two reasons. First, it asserts that punitive damages are not available on claims for vicarious liability. Second, it argues that Plaintiffs cannot satisfy the stringent burden in order to obtain punitive damages.

The Mississippi punitive damages statute provides in pertinent part:

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are

> sought acted with actual malice, gross negligence which evidence a willful,
> wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code Ann. § 11-1-65(1)(a). Importantly, the statute only permits punitive damages if the conduct is attributable to "the defendant against whom punitive damages are sought . . ." *Id.* And because a vicarious liability claim under respondeat superior "is a derivative claim arising solely out of the conduct . . . of the defendant's employee within the scope of his or her employment," *Littlejohn v. Werner Enters., Inc.*, 2015 WL 34854651, at *2 (N.D. Miss. June 2, 2015) (additional citations omitted), district courts in this state have consistently held that punitive damages are unavailable against a defendant if the sole source of liability asserted against it is vicarious liability. *See id.*; *Dinger v. Am. Zurich Ins. Co.*, 2014 WL 580889, at *4 (N.D. Miss. Feb. 13, 2014); *Buckalew v. Schneider Nat'l Carriers, Inc.*, 2014 WL 4146654, at *3 (S.D. Miss. Aug. 19, 2014); *Poe v. Ash Haulers, Inc.*, 2011 WL 2711283, at *5 n.2 (N.D. Miss. July 12, 2011); *Lee v. Harold David Story, Inc.*, 2011 WL 3047500, at *2 (S.D. Miss. July 25, 2011); *Dawson v. Burnette*, 650 F.Supp.2d 583, 286 n.1 (S.D. Miss. July 20, 2009); *Bradley v. Wal-Mart Stores, Inc.*, 2006 WL 2792338, at *4 (S.D. Miss. Sept. 27, 2006).

Relying on this extensive precedent, the Court finds that Peco is entitled to summary judgment as to its request for punitive damages to the extent that those claims are based on vicarious liability.

In addition, Peco argues that Plaintiffs' requests for punitive damages as to the remaining claims should be dismissed because Plaintiffs have failed to provide sufficient evidence to satisfy the stringent punitive damages standard. While the Court recognizes that the punitive damages statute requires a high standard of proof, the Court finds, as it did with Peco's prior "lack of proof" argument as to the flies on the properties, that Plaintiffs have provided sufficient evidence to survive summary judgment. As emphasized throughout this opinion, the Court's function at

this stage is not to decide factual disputes but only determine if they exist. Because factual disputes remain, the Court finds that summary judgment is not proper as to the remaining requests for punitive damages.[4]

## IV.    Conclusion

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Relying on this standard and for the reasons set forth above, the Court finds that Peco is entitled to summary judgment as to Plaintiffs' negligent entrustment claim and their claims for punitive damages insofar as they are based upon the theory of vicarious liability. However, the Court finds that genuine issues of material fact exist as to all other claims. Accordingly, it is hereby, ORDERED that Peco's *Omnibus Motion for Summary Judgment* [185] is GRANTED as to Plaintiffs' negligent entrustment claim and their request for punitive damages on their vicarious liability claims and DENIED as to all other claims.

SO ORDERED this the 29th day of November, 2016.


**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

[4]  The Court notes that Section 11-1-65 of the Mississippi Code provides that the trier of fact shall first determine whether compensatory damages are to be awarded before addressing any issues related to punitive damages. Therefore, if the jury in this matter determines that Plaintiffs are entitled to an award of compensatory damages, the Court will then hold an evidentiary hearing to determine whether their request for punitive damages should be submitted to the jury. *See* Miss. Code Ann. § 11-1-65(b)-(d).