**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

JAMES E. KING, SR., et al.                                                    **PLAINTIFFS**

v.                                                    **Civil Action No.: 1:14-cv-00088-MPM-DAS**

COLE'S POULTRY, LLC, et al.                                                    **DEFENDANTS**

## ORDER

Presently before the Court is defendant Peco Foods, Inc.'s ("Peco") *Motion in Limine to Exclude Expert Opinion Testimony of Dr. Robert Hall* [259]. Plaintiffs filed a response in opposition to the motion, to which Peco filed a rebuttal. Upon due consideration of the parties' arguments, in addition to relevant authorities and evidence, the Court is now prepared to rule.

### Standard for Expert Testimony

This Court has previously recognized its duty "to screen a proffered expert's testimony to determine admissibility." *Childs v. Entergy Miss., Inc.*, 2009 WL 2508128, *2 (N.D. Miss. Aug. 13, 2009). "Expert testimony is not admissible unless the expert is qualified and the opinion is scientifically valid and methodologically sound." *Miller v. Genie Indus., Inc.*, 2012 WL 161408, at *4 (N.D. Miss. Jan. 19, 2012) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). "When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

Regarding relevance, the testimony must "assist the trier of fact to understand the evidence or determine a fact in issue[.]" *Childs*, 2009 WL 2508128, at *2. Moreover, the relevance requirement is satisfied "where there is a sufficient relationship between the subject of

1

the proffered testimony and the facts of the case, so that the testimony aids the factfinder in resolving a disputed issue." *Id.* (additional citations omitted).

As to reliability, "[a] party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Smith*, 495 F.3d at 227 (citing FED. R. EVID. 702). "Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertains to 'scientific knowledge' establishes a standard of evidentiary reliability." *Reed v. Flores*, 2010 WL 5051474, at *2 (N.D. Miss. Dec. 3, 2010) (quoting *Daubert*, 509 U.S. at 590)).

Moreover, the Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)) (additional citations omitted). The Court also notes that "[t]he party offering the expert testimony bears the burden of proving that the testimony is admissible." *Miller*, 2012 WL 161408, at *4 (citing *Smith*, 495 F.3d at 227).

### Discussion

In its motion, Peco asserts that this Court should "exclude all expert opinion testimony offered by Robert D. Hall, Ph.D., J.D. as inadmissible under Fed. R. Evid. 702 and 703 pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)." Peco also alternatively requests that this Court dismiss with

prejudice "Plaintiffs' claims that insects (flies) from the Cole and Skeels poultry farms have impaired Plaintiffs' ability to use and enjoy their properties."

To support its position, Peco states that the testimonies of many individual plaintiffs as to the large quantity of flies on their properties are inconsistent with Dr. Hall's findings in his site visits. Dr. Hall conducted two site visits to the Cole's and Skeels facilities in both January 2016 and May 2016. During the January 2016 visit, Dr. Hall spent approximately five hours inspecting the Cole's and Skeels facilities, along with some of the plaintiffs' properties and the surrounding areas. In summarizing the results of his inspections, he stated that there were "no fly specimens available for collection at the Skeels/Cole poultry operations when I was there on January 25th. The principle [sic] reason is that this initial site visit was conducted during mid-winter when flies are not active." Dr. Hall further stated that "[m]ost of the so-called nuisance flies don't become active until you get prevailing temperatures that are much over 50 degrees." Nevertheless, Dr. Hall concluded that "it is my opinion that it is more likely than not that the vast majority of flies experienced by the plaintiffs on their properties and inside their homes traveled there from the Skeels/Cole poultry operations located off of Tumblin Road in Monroe County, Mississippi. Plaintiffs' properties are within the typical flight range of house and blow flies."

Dr. Hall returned to visit the site on May 10, 2016. As with his first visit, Dr. Hall did not observe any flies during the inspection but stated that "it remains too early in the season for house fly activity." From May 6-9, 2016, Dr. Hall also conducted "fly strip analyses," which essentially consists of placing sticky tapes at the front and back door of each home. Describing his findings, Dr. Hall stated that "I noted very few house flies and no blow flies on the fly strips examined." After again failing to observe many flies during this second visit, Dr. Hall stated that "house fly populations do not build to significant levels until summer temperatures prevail.

Greenbottle blow flies are likewise most abundant in mid-summer." Thus, Dr. Hall concluded that he "remain[ed] unable to document house or blow fly issues relevant to the Cole and Skeels poultry operations, because [his] visits have been during the winter or spring seasons when such fly populations are not expected to be significant."

Relying on these facts and the individual plaintiffs' testimonies, Peco avers that "[a]ssuming that Plaintiffs have testified truthfully, Dr. Hall's opinion that he did not see any flies in January or May 2016 because flies are not active during those months or in the winter or spring seasons is unreliable and fails to conform with the requirement under Fed. R. Evid. 702 that an expert's opinions be based on sufficient facts or data." Peco also argues that because Dr. Hall did not determine the normal background level for flies in the area, he should not be permitted to testify that the fly population was elevated due to the conditions at the Cole's and Skeels facilities. Alternatively, Peco argues that if the Court accepts Dr. Hall's testimony, it should dismiss plaintiffs' nuisance claims because the plaintiffs' testimonies are inconsistent with Dr. Hall's findings, specifically stating that "if Dr. Hall is right and Plaintiffs have embellished the truth, the Court should dismiss these claims in their entirety pursuant to its discretionary authority to issue an appropriate sanction for Plaintiffs' discovery abuse that can only be described as perjury."

In opposition, plaintiffs assert that Dr. Hall's failure to observe a larger quantity of flies can be attributed to little more than unfortunate scheduling. Moreover, they assert that Dr. Hall's opinion that, more likely than not, the flies on plaintiffs' properties traveled there from the Skeels and Cole's facilities is indeed admissible, as it satisfies the FRE 703 standard. Plaintiffs concede that Dr. Hall did rely in part on representations made to him by individual plaintiffs but also argue that "it is perfectly appropriate for an expert to rely upon such information under

[FRE] 703." Finally, Plaintiffs assert that cross-examination is the proper vehicle for Peco to expose its criticisms of Dr. Hall's findings.

The Court finds that Peco's motion should be denied. As an initial matter, the Court notes that Dr. Hall is qualified to testify as an expert. "The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to the credibility and weight, not admissibility." *Watkins v. New Palace Casino, LLC*, 2014 WL 10100195, at *2 (S.D. Miss. Oct. 31, 2014) (additional citations omitted). Dr. Hall earned a masters of science degree in medical and veterinary entomology, along with a Ph.D. in medical and environmental entomology, from Virginia Tech. He also has extensive professional experience in the field of entomology. The Court sees no basis to question Dr. Hall's qualifications, and Peco does not assert that he is unqualified. Accordingly, the Court finds that Dr. Hall is qualified to testify as an expert in this matter.

The Court now turns to the issue of whether the proposed testimony satisfies the *Daubert* standard. In his report, Dr. Hall states that based upon his extensive experience and education, along with his observations at the site, it is his opinion that the flies on the plaintiffs' properties traveled from the Cole's and Skeels facilities. Dr. Hall explained that he had investigated the surrounding areas and found no other potential source for the large amount of flies. Moreover, Dr. Hall opined that his failure to observe a larger amount of flies during his site visits was due to the temperature.

The Court notes that "[t]he proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court finds that plaintiffs have met this standard. In his report, Dr. Hall explained that although he had not

personally observed a large quantity of flies during his site visits due to the weather, the Cole's and Skeels facilities were potential breeding grounds for flies, plaintiffs' properties were within the typical flight range of flies, and he did not observe any other potential sources for the flies in the surrounding area. Although the Court recognizes Peco's criticisms concerning the discrepancies between Dr. Hall's findings and the individual plaintiffs' testimony, Peco will be given the opportunity at trial to cross-examine Dr. Hall to expose its perceived errors in his analysis. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Moreover, the Court notes that it is well-settled that "it is the jury's function to assess the credibility of the expert witnesses and the weight to be given to their testimony." *U.S. v. Harper*, 450 F.2d 1032, 1037 (5th Cir. 1971).

The Court also finds that Peco's alternative request to dismiss plaintiffs' nuisance claims should be denied. As stated above, Peco will be given an opportunity at trial to expose the discrepancies between Dr. Hall's findings and the individual plaintiffs' testimonies. Additionally, the Fifth Circuit has instructed that a district court should give "proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996). Ultimately, the Court finds that Peco's motion should be denied.

**Conclusion**

Relying on the foregoing analysis, the Court finds that Peco's motion to exclude Dr.

Hall's testimony is not well-taken.  Accordingly, it is hereby, ORDERED that Peco's *Motion in*

*Limine to Exclude Expert Opinion Testimony of Dr. Robert Hall* [259] is DENIED.

SO ORDERED, this the 17th day of January, 2017.


**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**