IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**JAMES E. KING, SR., et al.**                                                                              **PLAINTIFFS**

**v.**                                             **Civil Action No.: 1:14-cv-00088-MPM-DAS**

**COLE'S POULTRY, LLC, et al.**                                                        **DEFENDANTS**

## ORDER

This cause comes before the Court on defendant Peco Foods, Inc.'s ("Peco") *Omnibus Motion in Limine* [428], in which Peco raises eighteen individual motions *in limine*. Plaintiffs filed a response opposing many of the motions. Having reviewed the submissions of the parties, in addition to relevant authorities and evidence, the Court is now prepared to rule.

### Standard for Motions in Limine

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (additional citations omitted). In this context, "[e]vidence should not be excluded . . . unless it is clearly inadmissible on *all potential grounds*."[1] *Id.* (quoting *Fair v. Allen*, 2011 WL 830291, at *1 (W.D. La. Mar. 3, 2011)) (emphasis added).

Evidentiary rulings "should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Rivera v. Salazar*, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008) (citing *Sperberg v. Goodyear Tire & Rubber Co.*,

---

[1] *See also U.S. v. Porter*, 2016 WL 740393, at *3 (E.D. La. Feb. 25, 2016) (quoting *Harris v. City of Circleville*, 2010 WL 816974, at *2 (S.D. Ohio Mar. 5, 2010)) ("[A] court should not make a ruling *in limine* unless the moving party meets its burden of showing that the evidence in question is *clearly inadmissible*.") (emphasis added).

1

519 F.2d 708, 712 (6th Cir. 1975)). Moreover, the "[d]enial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Gonzalez v. City of Three Rivers*, 2013 WL 1150003, at *1 (S.D. Tex. Feb. 8, 2013) (quoting *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993); *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

This Court has previously emphasized that "[t]he purpose of motions *in limine* is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify *specific* issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." *Maggette v. BL Development Corp.*, 2011 WL 2134578, at *4 (N.D. Miss. May 21, 2011) (emphasis in original); *see also Estate of Wilson v. Mariner Health Care, Inc.*, 2008 WL 5255819, at*1 (N.D. Miss. Dec. 16, 2008) ("[M]otions *in limine* should be narrowly tailored to address issues which will likely arise at trial and which require a pre-trial ruling due to their complexity and/or the possibility of prejudice if raised in a contemporaneous objection."). Additionally, a motion "set[ting] forth a lengthy laundry list of matters, most of them of a highly vague nature . . . constitutes an improper 'shotgun' motion which fails to meet this court's standards for motions *in limine*." *Estate of Wilson*, 2008 WL 5255819, at *1.

**Discussion**

With this standard in mind, the Court turns to the case at hand. As previously stated, within the present motion, Peco raised eighteen individual motions *in limine*. The Court has considered each motion and will address them in turn.

*First Motion*:

First, Peco requests that the Court exclude any evidence regarding alleged nuisances that occurred after July 20, 2011. On November 16, 2016, the Court entered an order denying Plaintiffs' motion to extend the damages period, rendering alleged nuisances that occurred after the filing of the instant suit irrelevant. Plaintiffs assert that they "generally do not oppose this motion. However, such evidence may be relevant at the punitive damages stage of this action."

The Court will grant Peco's motion as it pertains to the initial trial of this matter. If necessary, the Court will consider the issue at the punitive damages stage.

*Second Motion*:

Similar to its first motion, Peco also requests that the Court exclude "evidence regarding alleged damages or losses of use and enjoyment of Plaintiffs' properties after July 20, 2011." Peco asserts that this evidence should be excluded for the same reasons set forth in its first motion. Plaintiffs state that they do not oppose the motion but that such evidence may be relevant at the punitive damages stage of this action.

As with the first motion, the Court will grant the present motion, and it will take up the issue again at the punitive damages stage, if needed.

*Third Motion*:

Peco next argues that the Court should exclude "evidence regarding alleged physical symptoms, health problems, medical conditions, and/or emotional distress." In support of this proposition, Peco states that "Plaintiffs seek compensatory damages solely for the alleged loss of use and enjoyment of their properties. They do not allege to have incurred any physical symptoms, health problems, medical conditions, and/or emotional distress caused by living in the vicinity of the Cole's and Skeels farms."

In opposition, Plaintiffs assert, in pertinent part:

> Defendant's motion fails to grasp the true nature of Plaintiffs' claims. Plaintiffs have stated, repeatedly, that they are not making true medical claims, nor will they seek compensation for any medical bills from any healthcare professional. This is because Plaintiffs' claims are not based upon medical injury. They are based fundamentally on their inability to use and enjoy their property, which may include certain symptomatic reactions that Plaintiffs may experience as a result of their exposure to noxious air laden with particulate matter.

The Court finds Plaintiffs' argument to be well-taken. In the Court's view, the physical symptoms experienced by Plaintiffs are relevant to the extent that they tend to show their diminished ability to use and enjoy their property. This issue strikes the Court as one that would likely be proper to address in a jury instruction. The Court declines, however, to exclude the evidence altogether; accordingly, the motion will be denied.

*Fourth Motion*:

Peco also asserts that "[t]he Court should prevent any testimony or evidence that Plaintiffs may incur health problems or medical conditions in the future caused by living in the vicinity of the Skeels and Cole's farms. Moreover, the Court should exclude any testimony by Plaintiffs that they have fears or concerns about potential health problems or medical conditions in the future that may be caused by alleged hazardous substances, pathogens, toxins, odors, or other emanations from the poultry farms." To this point, Peco emphasizes that Plaintiffs cannot recover damages based on their fear of potential future injuries under Mississippi law.

Plaintiffs assert that they have not and do not intend to seek compensation for future medical injuries. "Rather, Plaintiffs only seek recovery for present injuries and concerns, such as anxiety and discomfort as a result of Defendant's frequent and unreasonable invasion of Plaintiffs' properties." Further, Plaintiffs state that they "have properly limited any alleged damages to present inconvenience, annoyance, and discomfort, including anxiety about their

4

inability to plan for or use their property, and feeling trapped inside their homes by the offensive and oppressive odors generated by Defendant."

The Court finds that Peco's motion should be denied, as Plaintiffs do not appear to be pursuing the future damages which Peco asserts are impermissible. The Court will not permit Plaintiffs to attempt to obtain recovery based on their fear for potential future injuries; however, the Court finds that Plaintiffs' anxiety and discomfort concerning the present and future state of their properties is admissible. Accordingly, the motion will be denied.

*Fifth Motion*:

Peco requests that the Court exclude "any suggestion at trial that Peco operates in a manner that supports animal cruelty[.]" Plaintiffs do not oppose the motion. Therefore, it will be granted.

*Sixth Motion*:

Next, Peco requests that the Court "bar evidence or argument by Plaintiffs that racial motivation played a role in the geographic locations of the Cole's and Skeels farms." Within its argument concerning this motion, Peco cited the deposition transcript from Plaintiff James E. King, Sr., wherein King testified as follows:

> Q. Somebody was looking to sell lots there?
> A. That's right.
> Q. And they didn't sell any?
> A. They didn't sell anything. I think Martha bought it. I think she bought it. And I think she was having a problem building those barns, too. I don't know whether it was from Jackson or where. She was having a problem getting them built. And one of her workers told a friend of mind that she told – that he told him that Ms. Martha said she didn't give a damn what them niggers say, she would build what the hell she wanted built on her property. I want to tell you just like they told me.
> Q. Who told you that?
> A. That's what one of her workers told a friend of mine.
> Q. One of her workers told a friend of yours who told you?
> A. That's right.

5

Peco asserts that "contrary to Mr. King's inadmissible double hearsay testimony regarding what someone allegedly told Mr. King's friend, absolutely no evidentiary basis exists for introducing allegations of racial animus into this trial."

In response, Plaintiffs argue that "[a]ll evidence concerning racial motivations should not be summarily excluded before trial has occurred and before any evidence has been presented and should be addressed on a case-by-case basis at trial. This motion *in limine* is too vague and broad and should be stricken." Plaintiffs do, however, concede that the sample testimony provided within Peco's motion is an example of improper testimony that should not be admitted at trial.

The Court finds Plaintiffs' response persuasive. Under Mississippi law, "[o]ne is subject to liability for a private nuisance if . . . the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct . . ." *Christmas v. Exxon Mobil Corp.*, 138 So.3d 123, 126 (Miss. 2014). Thus, one way in which a plaintiff may prove his/her nuisance case is to show that the invasion was intentional. In the Court's view, statements regarding racial animus toward the citizens living in the surrounding community have some probative value as to whether Peco acted intentionally. Thus, as Plaintiffs request, the Court will not summarily exclude all evidence pertaining to this issue at this time. The Court does, however, agree with the parties that the portion of the deposition transcript provided by Peco is an example of inadmissible testimony. But because the Court finds that all testimony regarding racial animus should not be excluded at this time, the motion will be denied.

*Seventh Motion*:

In its seventh motion, Peco argues that:

Plaintiffs do not allege that emissions from the Cole's and Skeels farms contaminate the Plaintiffs' water sources or violate the Clean Water Act ("CWA"). Plaintiffs have not conducted any tests or water analyses on Plaintiffs' properties that demonstrate any abnormality in the quality of water. Nor have Plaintiffs provided any evidence that they suffered any injury related to water quality, or designated the proper medical expert to establish causation. Fed. R. Evid. 702. Accordingly, the Court should bar all claims, allegations, or discussion of alleged contamination of the Plaintiffs' water sources or alleged violations of the CWA.

Plaintiffs respond by stating that they "should be permitted to explain to the jury their fears and concerns related to living near poultry kept in confinement, which in some instances, may include concerns of water contamination or water quality."

The Court agrees with Plaintiffs' argument. The individual plaintiffs' subjective fears and concerns appear to be relevant as to their claims for loss of use and enjoyment of their properties. Certainly, the jury is free to accept or reject the reasonableness of that testimony; however, the Court is not willing to exclude it altogether. The Court does, though, agree with Peco that Plaintiffs should not be permitted to suggest that Peco violated the Clean Water Act, as that issue has not been pled nor has discovery been conducted concerning it. Therefore, the Court will grant the motion to the extent that it seeks to bar admission of claims or allegations regarding that act.

*Eighth Motion*:

Peco argues that the Court should prohibit Plaintiffs from testifying "about an increase of flies at their properties that they believe migrate from the Cole's and Skeels farms to the Plaintiffs' properties" because they are not qualified as experts on this issue.

7

Plaintiffs have designated an expert witness—Dr. Robert Hall—to testify about the presence of flies on Plaintiffs' properties and the source of those flies. However, the Court finds that Plaintiffs themselves should be permitted to testify about the alleged increase in fly population around the time the Cole's and Skeels operations began, as they have personal knowledge of those facts.

The Court can foresee an issue potentially arising if an individual plaintiff attempts to speculate at trial as to the source of the flies. However, the Court cannot rule upon that issue without the context of trial. The Court also notes that Peco is not without a remedy, as it will be given the opportunity at trial to cross-examine each of Plaintiffs' witnesses. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The motion will be denied.

*Ninth Motion*:

Peco argues that the Court should exclude any testimony regarding the condition of the public roadways in the area surrounding Plaintiffs' properties and the Cole's and Skeels farms. Specifically, Peco avers that "some Plaintiffs complained about the condition of public roadways near their property, the deterioration of which they attribute to truck traffic from the Cole's and Skeels farms. Testimony regarding the condition of public roadways is irrelevant in this matter, as Peco exercises no control over the roadways." In addition, Peco asserts that only some of the plaintiffs have complained of the increased traffic and its effect on the roadways and further argues that to the extent the Court does permit testimony concerning the condition of the public roadways, "it should bar Plaintiffs from making blanket statements regarding alleged effects of

8

traffic on the roadways and limit the discussions of relevant evidence only to those Plaintiffs who are making such claims." Finally, Peco states that any complaints regarding the condition or use of the public roads would only be relevant if Plaintiffs were pursuing a claim for public nuisance rather than private nuisance.

Under Mississippi law, a plaintiff may recover damages in a private nuisance action where the damage itself is unique to the plaintiff despite the fact that the public at large may also be affected by the defendant's conduct. *See Leaf River Forest Prods., Inc. v. Ferguson*, 662 So.2d 648, 665 (Miss. 1995). Thus, Plaintiffs assert that they "should be permitted to offer evidence of how they have personally been aggrieved or damaged by Defendant's treatment of the roads near Plaintiffs' properties." Plaintiffs also reiterate that they "are not seeking to recoup damages for lost property value or to repair the damage to the roadways, but seek damages based upon the annoyance, inconvenience, discomfort, and sickness from Defendant's treatment of those roads."

The Court finds Plaintiffs' arguments persuasive and that the motion should be denied. Plaintiffs should be permitted to testify as to the effect that Peco's conduct had on the public roadways in the relevant area. Although the deterioration of the public roadways harms the public at large, Plaintiffs have allegedly been uniquely affected by Peco's conduct, as they have suffered annoyance, inconvenience, and discomfort in a different manner than other members of the public.

Nevertheless, the Court does note that Peco's motion does have some merit to the extent that it seeks to prohibit "blanket statements regarding alleged truck traffic on the roadways[.]" However, while the Court will not permit such speculative statements regarding the traffic on the roadways nor will it permit parties to testify on that issue unless they possess personal

9

knowledge, the Court cannot make such a ruling until it arises in the context of trial. Accordingly, the motion must be denied.

*Tenth Motion*:

In its tenth motion, Peco states that many individual plaintiffs testified in their depositions that they have witnessed poultry litter being applied to farmland in the vicinity of Plaintiffs' properties. However, Peco argues that "none of the plaintiffs who testified about poultry litter being applied to farmland in the area . . . can identify that the alleged litter came from the Cole's or Skeels farms or that Peco had any involvement whatsoever in the application of the litter." Thus, Peco requests that the Court prohibit any evidence concerning the "alleged application of poultry litter to land in the vicinity of Plaintiffs' properties."

In response, Plaintiffs argue that the spreading of chicken litter and waste from Peco's poultry operations effectively spreads odors to the surrounding areas, making the conduct relevant to this case.

The Court finds that the motion should be denied. The conduct which Peco wishes to exclude strikes the Court as highly relevant to this action. It appears that Peco wants this Court to exclude the evidence based on the fact that none of the individual plaintiffs actually observed the litter being taken from the Cole's and Skeels farms before being spread in the surrounding area. This position is not well-taken. Peco can certainly inquire about this issue on cross-examination; however, the Court is not willing to wholly exclude that evidence. The motion will be denied.

*Eleventh Motion*:

Peco asserts that "[t]he Court should prevent Plaintiffs' counsel from making statements or comments about other nuisance actions or that juries in prior cases involving claims of

10

nuisance against poultry and other livestock companies and growers have awarded damages to other plaintiffs." Plaintiffs have stated that they do not oppose this motion. Accordingly, it will be granted.

*Twelfth Motion*:

Peco's entire argument as to this motion states:

> The Court should exclude any evidence, such as documents or testimony, related to or concerning subsequent remedial measures taken by Peco, Skeels, or Cole's. *See* Fed. R. Evid. 403. Moreover, any introduction of such information would create a substantial danger of misleading the jury and unduly prejudicing Peco, and would certainly be more prejudicial than probative. *Id.*

In response, Plaintiffs assert that they "cannot meaningfully address this motion because Defendant fails to offer any evidence that it believes Plaintiffs may present of subsequent remedial measures taken in this case that would be improper."

As stated above, "[t]he purpose of motions *in limine* is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify *specific* issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." *Maggette*, 2011 WL 2134578, at *4. Peco's motion does not satisfy this standard, as it failed to identify any *specific* issue that is likely to arise at trial. In fact, it appears that Peco simply wishes for the Court to reiterate that it will apply Rule 407 of the Federal Rules of Evidence, which prohibits the admission of evidence regarding subsequent remedial measures to show negligence or culpable conduct. Peco can rest assured that the Court will apply Rule 407—and all other Rules of Evidence—at trial. However, Peco did not provide sufficient information in its motion for the Court to grant its request, as the Court is unclear which *specific* evidence Peco wishes to exclude. The motion will be denied.

11

*Thirteenth Motion*:

Peco argues that "[t]he Court should preclude Plaintiffs' counsel from referencing themselves or their law firms as 'environmental lawyers' or any other reference that suggests they constitute enforcers of the law or identifies them with the better part of human nature." Plaintiffs do not oppose this motion. It will be granted.

*Fourteenth Motion*:

Peco asks the Court "to preclude Plaintiffs or Plaintiffs' counsel from making any comment to the effect that the jury should put themselves in the shoes of the Plaintiffs. Such comments violate the 'Golden Rule,' which prohibits this type of instruction to the jury." Plaintiffs have stated that they do not oppose Peco's request. Accordingly, the motion will be granted.

*Fifteenth Motion*:

Peco argues that the Court should "preclude Plaintiffs' counsel from mentioning, inquiring, or suggesting that the jury should consider Peco's net worth, financial status, or size (including number of employees and divisions) unless and until the Court should find that such matters are relevant and their probative value outweighs the prejudicial effect."

Plaintiffs oppose the motion. Specifically, they assert that in order to submit their temporary nuisance claim to the jury, they must present evidence that the nuisance complained of is capable of abatement and that they must be able to explain various options that were available to abate the nuisance and the cost for doing so. Accordingly, Plaintiffs state that they should be permitted to present that Peco could have abated the nuisance, "given its available assets and resources[.]"

12

While the Court notes that Plaintiffs' failed to cite any authority that they must show the nuisance is capable of abatement, the Court nevertheless finds that evidence of Peco's financial status has some relevance in this case. As previously mentioned, under Mississippi law, "[o]ne is subject to liability for a private nuisance if . . . the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct . . . ." *Christmas*, 138 So.3d at 126. Further, the Mississippi Supreme Court has also held that "[t]he law of private nuisances is a law of degree, and usually turns on a question of fact, whether the use is unreasonable or not, under all the circumstances." *Reed v. Cook Const. Co., Inc.*, 336 So.2d 724, 725 (Miss. 1976) (quoting *Reber v. Ill. Cent. R.R. Co.*, 138 So. 574 (Miss. 1932)); *see also T.K. Stanley, Inc. v. Cason*, 614 So.2d 942, 953 (Miss. 1992) ("[E]very case must be decided on its own facts, giving due consideration to the reasonableness of the use of the defendant's property and the nature of the interference with the plaintiff's property.").

The Court finds that although Plaintiffs need not specifically show that the nuisance was capable of abatement in order to submit the issue to the jury, Peco's financial ability to potentially abate the nuisance has some probative value as to the reasonableness of Peco's conduct. Thus, the Court finds that Plaintiffs should be permitted to show that Peco possessed the financial resources to abate the nuisance. However, the Court does agree with Peco that the evidence should not be admitted for any other purpose, as it is not relevant to any other issue. Therefore, the Court will permit Plaintiffs to introduce evidence to show that Peco had the financial capability to abate the alleged nuisance, but it will not allow the admission of the evidence for any other purpose. In fact, the Court finds that a jury instruction to this point may be appropriate.

*Sixteenth Motion*:

Peco requests that the Court preclude Plaintiffs from comparing or discussing the relative wealth of Plaintiffs and Peco during the liability phase of the trial. Plaintiffs do not oppose the motion. It will be granted.

*Seventeenth Motion*:

Peco asserts in its seventeenth motion that:

The Court should prevent Plaintiffs' counsel from discussing or referencing the parties' respective burdens of proof or any other legal issues during voir dire examination. Discussion of legal issues, including burdens of proof, should be reserved for closing argument.

Plaintiffs respond that they "should be permitted to inquire during voir dire examination about a potential juror's understanding of the law and his/her ability and willingness to follow the law."

The Court finds no reason that Plaintiffs should not be permitted to ensure through voir dire that prospective jurors have the ability and willingness to follow the applicable law. In fact, this strikes the Court as an important and desirable notion preferable in all trials. The motion will be denied.

*Eighteenth Motion*:

Peco requests that the Court bar Plaintiffs from proffering evidence or statements made in settlement negotiations. Rule 408 of the Federal Rules of Evidence specifically prohibits this type of evidence from being admitted into evidence. *See* FED. R. EVID. 408(a). As previously stated, "[t]he purpose of motions *in limine* is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify *specific* issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." *Maggette*, 2011 WL

2134578, at *4 (emphasis in original).  Thus, the Court finds that it was unnecessary for Peco to file a motion *in limine* regarding this issue, as it is specifically prohibited by the Federal Rules of Evidence.  Nevertheless, the Court will grant the request.

## Conclusion

In accordance with the foregoing analysis, Peco's *Omnibus Motion in Limine* [428] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 9th day of February, 2017.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**