**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**JAMES E. KING, SR., et al.**                                        **PLAINTIFFS**

**v.**                                        **Civil Action No.: 1:14-cv-00088-MPM-DAS**

**PECO FOODS, INC.**                                        **DEFENDANT**

<u>**ORDER**</u>

    Presently before the Court is Plaintiffs' *Motion for New Trial or Judgment as a Matter of Law* [484]. Defendant Peco Foods, Inc. ("Peco") filed a response in opposition to the motion, and Plaintiffs filed a reply. Upon due consideration of the parties' submissions and relevant authorities, the Court is now prepared to rule.

**Factual and Procedural Background**

    This was a nuisance and negligence action. The plaintiffs in the case were fifty-seven residents of the Egypt community in Monroe County, Mississippi.[1] Peco—the defendant—is engaged in broiler chicken operations. Cole's Poultry, LLC ("Cole's") and Skeels Poultry, LLC ("Skeels") operate chicken houses in the Egypt community—in close proximity to Plaintiffs' homes and properties. Peco has a contractual arrangement with Cole's and Skeels, under which Peco, an Alabama corporation, supplies chickens to Cole's and Skeels, who actually operate the Monroe County facilities. Peco maintains control over a large portion of Cole's and Skeels' operations and management of the chickens throughout the growing process, as clearly set forth in the parties' contracts. While Plaintiffs initially filed suit against Peco, Cole's, and Skeels, they eventually dismissed Cole's and Skeels and proceeded solely against Peco.

---

[1] While there were initially fifty-seven plaintiffs at the beginning of the trial, two plaintiffs were voluntarily dismissed with prejudice during the trial. Therefore, there were fifty-five plaintiffs at the time the case was submitted to the jury.

In their complaint, Plaintiffs alleged that Peco's operations interfered with their ability to use and enjoy their properties. Specifically, Plaintiffs alleged that "[t]he foul, noxious, and potentially dangerous odors emanating from these chicken facilities, as well as millions of flies and other potentially harmful emissions have impaired Plaintiffs' ability to use and enjoy their properties and have caused substantial damage to their quality of life." Plaintiffs asserted both vicarious liability and direct liability claims for nuisance and negligence against Peco based upon the company's role in the operation of the Monroe County facilities.

A jury trial began on February 27, 2017 and continued until March 15, 2017, when the jury returned a verdict in favor of Peco on all claims, awarding Plaintiffs no damages. The Court entered a judgment reflecting the jury's verdict the following day. Plaintiffs subsequently filed the present motion on April 13, 2017, requesting a new trial or, in the alternative, judgment as a matter of law. The Court will first address Plaintiffs' arguments in favor of a new trial and will then turn to their request for judgment as a matter of law.

## Plaintiffs' Motion for a New Trial

In their motion, Plaintiffs argue that they are entitled to a new trial for the following four reasons: (1) Peco's improper and racially-motivated use of peremptory strikes to remove three African-American jurors from the venire panel, (2) the introduction of improper evidence and argument concerning the poultry industry as a whole, (3) Peco's improper argument suggesting to the jury that following Mississippi Department of Environmental Quality ("MDEQ") regulations should immunize an operation, and (4) improper remarks by Peco's counsel in closing argument. As set forth below, the Court is unpersuaded by Plaintiffs' arguments and finds that the motion should be denied.

*Standard*

In pertinent part, Rule 59 of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(1)(A). This Court has previously recognized the vagueness of this statement, looking to a treatise on the subject to provide further guidance:

> The draftsman of the rule found that it was impractical to enumerate all the grounds for a new trial. Thus the rule is stated in broad terms. It has been said that the general grounds for a new trial are that the verdict is against the weight of the evidence, that the damages are excessive . . . and that the motion may also raise questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions.

*Williams v. Riley*, 2012 WL 1570187, *1-2 (N.D. Miss. May 3, 2012) (quoting 11 Wright & Miller, Federal Practice and Procedure § 2805)). Moreover, "[a] new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand." *Learmonth v. Sears, Roebuck and Co.*, 631 F.3d 724, 731 (5th Cir. 2011) (quoting *Foradori v. Harris*, 523 F.3d 477, 506 (5th Cir. 2008)). "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Nesbit v. W. Bolivar Sch. Dist.*, 2013 WL 12180518, *1 (N.D. Miss. May 9, 2013) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980)).

*Discussion*

Plaintiffs argue that four separate grounds entitle them to a new trial. The Court will address each argument in turn.

*Peco's uses of its peremptory strikes:*

First, Plaintiffs argue that they were "deprived of a fair trial in this matter due to [Peco's] improper and racially motivated use of peremptory strikes to remove African-American jurors from the venire panel." All three of Peco's peremptory strikes were used to strike African-Americans. The jury that was ultimately empaneled consisted of seven white jurors and one African-American juror.[2]

The United States Supreme Court has held that "racial discrimination in a civil litigant's exercise of peremptory challenges [] violates the Equal Protection Clause." *Georgia v. McCollum*, 505 U.S. 42, 44, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). In addition to offending the Constitution, the Fifth Circuit has also noted that discrimination in the jury selection process "calls into question the integrity of our judicial system." *U.S. v. Huey*, 76 F.3d 638, 641 (5th Cir. 1996).[3]

"[C]laims of racial discrimination in jury selection are analyzed in a three-step process. First, a defendant must make a prima facie showing that the prosecution has exercised peremptory challenges on the basis of race. Second, if a prima facie showing is made, the burden shifts to the prosecution to articulate a race-neutral reason for the peremptory challenge at

---

[2]   During the second week of the trial, one juror was excused from service when she became ill. Therefore, the final jury which deliberated and reached a verdict in this case consisted of seven jurors—six white jurors and one African-American juror.

[3]   *See also Chamberlin v. Fisher*, 2015 WL 1485901, *22 (S.D. Miss. Mar. 31, 2015) (quoting *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)) ("Discrimination in picking a jury 'causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process.'").

issue.  Third, the trial court must determine whether the defendant has proved purposeful discrimination."  *Price v. Cain*, 560 F.3d 284, 286 (5th Cir. 2009) (citing *Batson v. Kentucky*, 476 U.S. 79, 96-98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)) (internal citations omitted).[4]

In the case at bar, Plaintiffs objected to Peco's use of its peremptory strikes during the jury selection conference, raising a *Batson* challenge as to each strike.  The Court found that Plaintiffs made a prima facie showing that the challenges were made on the basis of race and then required Peco to provide non-racial bases for each of its strikes.  Peco did so, and the Court ultimately ruled in its favor as to all three strikes—finding that Plaintiffs had failed to meet their burden of proving purposeful discrimination.  Now, Plaintiffs again raise this issue, arguing that the Court erred in making its initial rulings and that Peco's use of its peremptory strikes to remove three African-Americans amounted to purposeful discrimination and deprived them of a fair trial.

"In considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted."  *Stevens v. Epps*, 618 F.3d 489, 493 (5th Cir. 2010) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008)) (additional citations omitted).  In determining this issue, "courts do not assess whether 'counsel's reason is suspect, or weak, or irrational.'  Instead, courts address 'whether counsel is telling the truth in his or her assertion that the challenge is not race-based.'"  *U.S. v. Thompson*, 735 F.3d 291, 297 (5th Cir. 2013) (quoting *U.S. v. Bentley-Smith*, 2 F.3d 1368, 1374-75 (5th Cir. 1993)) (internal citations omitted).  The crux of this

---

[4]   While the quoted three-step process is set forth in terms of a criminal prosecution, the United States Supreme Court has held that the same analysis applies to civil cases.  *See Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 630, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) ("Racial discrimination has no place in the courtroom, whether the proceeding is civil or criminal. . . [and] courts must entertain a challenge to a private litigant's racially discriminatory use of peremptory challenges in a civil trial.").

analysis is whether the stated justifications are "persuasive to the judge." *U.S. v. Jynes*, 197 F.

App'x 351, 354 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 338-39, 123 S.Ct. 1029, 154 L.Ed.2d

931 (2003)). Importantly, the burden is upon the party opposing the strike to "prove[] purposeful

racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834

(1995) (citations omitted).

Plaintiffs first aver that Peco improperly struck Lexus Matthews, an African-American

female, from the jury panel. When prompted by the Court to provide a reason for its decision to

exclude Matthews, Peco's counsel—Steve Carmody—stated that Matthews had bad allergies and

did not own her own home. Carmody's and Plaintiffs' counsel's—Richard Middleton—

arguments as to Matthews are quoted below:

> **Mr. Carmody:** First off, I'd like to say we accepted Viola Duff, who is an
> African-American. First off, addressing Lexus Matthews, Lexus Matthews, she
> does not own her own home, which we found to be something that was negative.
> She had bad allergies. Which, this is going to be a case where some of the
> plaintiffs are going to talk about allergies and their conditions.
>
> **The Court:** I don't remember her saying --
>
> **Mr. Middleton:** She didn't say one thing about allergies.
>
> **The Court:** I don't recall that.
>
> **Mr. Carmody:** It may be that we picked that up on her Facebook page or
> something like that. But that's what my notes say, bad allergies. She doesn't own
> her own home; she lives with somebody else. And we just didn't feel like she had
> appropriate eye contact with me. She was always looking down. She was very
> quiet, and I just -- her nonverbal was not good.

The Court ultimately found Carmody's response persuasive and overruled Plaintiffs'

*Batson* objection. Plaintiffs have attached to the present motion the Facebook post to which

Carmody referred in his response.  In that post, which was dated February 20 without providing a year[5], Matthews stated:

> Lord I guess the pollen has started because I've been sniffing and eyes been watering and swelling all day. #AllergiesGoAway. . .

Plaintiffs aver that "Matthews complained on only one day about allergy symptoms but neither the word 'bad' nor 'allergies' appears anywhere in her post."  Further, Plaintiffs argue that the facts that Matthews did not own her own home, that she suffered from seasonal allergies, and her nonverbal communication in the courtroom were not reasonable grounds to strike her. Specifically, Plaintiffs state that "[t]hese explanations by defense counsel appear to be nothing more than thinly-veiled attempts to cover the fact that [Peco] removed [her] for the sole reason that she is African-American."

In response, Peco avers that Matthews' previous Facebook post about allergies was a reasonable justification for striking her, stating that it was "well within its right to question whether a person who complained about sniffing, watery eyes, and swelling could be fair and impartial in a case involving claims about odors and the Plaintiffs' alleged inability to enjoy the outdoors because of those odors."  Peco also asserts that the fact that Matthews did not own her own home was a legitimate reason to strike her "given Peco's theme that 'good neighbors' attempt to work out their problems before filing lawsuits."  Peco finally responds that Matthews' nonverbal conduct in the courtroom was an additional reasonable ground to strike her.

As it did in the jury selection conference, the Court finds Peco's stated reasons to be persuasive and that its decision to strike Matthews was not based on race.  The fact that Matthews posted on Facebook about allergies, along with the fact that this case involved odors

---

[5]   The post was presumably made on February 20, 2017.  However, in the Court's view, the year in which the post was made is not nearly as relevant as its content.

and the ability to enjoy the outdoors, strikes the Court as a reasonable basis to strike her as a potential juror.  As to the fact that Matthews does not own her own home, the Court stands by its statement at the jury selection conference that "I think the fact that, in this case, she doesn't own her own property that was a legitimate question, something to give thought to[.]"

The Court also accepts Peco's representation that its decision to strike Matthews was based on her nonverbal communication.  The Fifth Circuit has previously held that "[v]alid reasons for exclusion may include 'intuitive assumptions' upon confronting a venireman."  *U.S. v. Terrazas-Carrasco*, 861 F.2d 93, 94 (5th Cir. 1988).  Factors such as eye contact and demeanor have previously been upheld as valid grounds for a peremptory challenge.  *Id.* (citing *U.S. v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988)); *see also Polk v. Dixie Ins. Co.*, 972 F.2d 83, 86 (5th Cir. 1992) ("Recognizing that the decision to exercise a peremptory challenge is subjective and often influenced by intuitive assumption, we have explicitly accepted eye contact (or lack thereof) as a legitimate rationale.") (citations omitted).

In sum, the Court finds persuasive the nondiscriminatory reasons set forth by Peco.  Plaintiffs have not carried their burden of proving purposeful discrimination, and, accepting Peco's reasons as legitimate, the Court finds that its previous ruling on Plaintiffs' *Batson* challenge as to Matthews should not be disturbed.

Next, Plaintiffs assert that Peco's decision to use a peremptory strike on Kimetrica Wright, an African-American female, was discriminatory.  During voir dire, Carmody and Wright engaged in the following exchange:

> **Mr. Carmody:** … Is there anybody here that thinks, as we're sitting right here today, that just because people smell stuff that they're going to fall sick or be sickly or eventually get sick?  Anybody here think that just because of a bad smell that you're going to suffer a medical condition?

**Ms. Wright:**  Well, it depends on if they already have a medical condition. Because, when I was growing up, I had asthma.  And certain things will trigger, you know, that off.  So it all depends.  Some people can stand certain smells; some people can't.

**Mr. Carmody:**  But you don't think just because there are smells they automatically will get sick or --

**Ms. Wright:**  Well, some people have weak stomachs; some people have cast-iron stomachs.

Thereafter, during the jury selection conference, when prompted to provide his reasons for exercising a peremptory strike on Wright, Carmody stated:

**Mr. Carmody:**  The next one was Kimetrica Wright.  She was the one that we talked about earlier that we debated back and forth on whether or not to strike her for cause.  She does not own her own home.  She smells -- she said that odors necessarily would result in sickness.  She is a medical provider, a nurse's assistant.  And, therefore, we think that we had plenty of nonracial information to strike her.

**The Court:**  I agree with that.  She said that it depends on the person; that some people odors would affect differently than others.  But I think that was a legitimate question and response, and I don't think it's racially motivated; so I'll allow that strike.

Thus, Peco's position is that the fact that Wright did not own her own home and her statements concerning the connection of odors and sickness were sufficient reasons to strike her. The Court finds these reasons to be legitimate.  As previously stated, the Court finds that the fact that a potential juror did not own their own home could be a legitimate concern.  That concern, in conjunction with Wright's statements during voir dire, provides a sufficient basis for Peco to strike her.  In the Court's view, Peco's decision to strike Wright was not based on race, and Plaintiffs have not carried their burden of proving purposeful discrimination.

Plaintiffs additionally argue that Peco's exercise of its third peremptory strike to remove Coretta Smith, an African-American female, was discriminatory.  During voir dire, the Court asked all members of the jury venire whether they had a special disability or problem that would

make it difficult for them to serve on the jury.  Smith responded to the Court's question as follows:

> **Ms. Smith:**  Right now I have a lot of family and friends that are sick.  And, mentally, I'm not sure that I will be able to stay focused.
>
> **The Court:**  Now, this is Ms. Smith?
>
> **Ms. Smith:** Yes, sir.
>
> **The Court:**  You have friends who are sick?
>
> **Ms. Smith:**  Friends and family.  And, mentally, I don't know if I can stay focused on being a juror right now.
>
> **The Court:**  Now, how would that affect your ability to serve as a juror?
>
> **Ms. Smith:**  Mentally.
>
> **The Court:**  Mentally?
>
> **Ms. Smith:**  Yes.
>
> **The Court:**  Did you say your friends are terminally ill?
>
> **Ms. Smith:**  Yes, sir.
>
> **The Court:**  What kind of friend is this?
>
> **Ms. Smith:**  I have a close aunt.  She have brain cancer. I have a cousin, she have two tumors on her brain; and I have a friend, she just found out she has breast cancer.
>
> **The Court:**  Okay.  Do you believe that you could set that aside for the time you were serving on the jury?
>
> **Ms. Smith:**  I can't promise that; mentally, I can't.
>
> **The Court:**  You cannot?
>
> **Ms. Smith:**  I can't promise that.

Peco relies on this exchange between the Court and Smith for its assertion that its decision to strike her was not based upon her race but, rather, legitimate questions as to whether

she could mentally focus throughout the duration of the trial.  The Court finds that this was a legitimate concern and a proper basis for Peco to exercise a peremptory strike.  Plaintiffs have not shown that Peco's decision to strike Smith was based upon discrimination.  Therefore, the Court will not disturb its prior ruling.

In summary, the Court rejects Plaintiffs' argument that Peco improperly utilized its peremptory strikes to remove African-Americans from the jury.  At trial, the Court conducted the three-step analysis, as required when a party raises a *Batson* challenge.  *See, e.g., Davis v. Ayala*, 135 S.Ct. 2187, 2199, 192 L.Ed.2d 323 (2015).  Upon Plaintiffs making their prima facie showing, the Court required Peco to provide its non-discriminatory reasons for its strikes.  After hearing and reviewing Peco's stated reasons, the Court overruled each of Plaintiffs' objections.  And now, after reviewing the record, the Court remains convinced that Peco did not make its decisions for the purpose of racial discrimination.  Therefore, because Plaintiffs have not met their burden of proving purposeful racial discrimination, their arguments on this point are rejected by the Court.

*Evidence and argument concerning the poultry industry as a whole:*

Plaintiffs next argue that they are entitled to a new trial "due to the introduction of improper evidence and argument concerning the poultry industry as a whole and the effect that a verdict in this case would have on the entire poultry industry."  In support of this position, Plaintiffs emphasize two specific portions of the testimony of Roddy Sanders—Peco's corporate representative at trial—and certain statements made by Peco's counsel during closing argument.  Plaintiffs state that the introduction of this evidence and argument resulted in Peco "improperly put[ting] the industry on trial in this case[.]"  Specifically, Plaintiffs cite the following testimony from Roddy Sanders' direct examination:

**Q.** Since you began work in Mississippi and buying things and investing in Mississippi, how much money has Peco invested in Mississippi?

**A.** We've invested over $80 million in the state of Mississippi.

. . .

**Q.** Could you tell the jury briefly about the economic impact that Peco operations have inside the state of Mississippi?

**A.** Well, I did mention the facilities that we have. As far as employees, we've got over 3300 employees in the state of Mississippi. Our payroll in Mississippi is over $112 million to those employees. We've got 385 chicken growers in the state of Mississippi, over 1450 chicken houses. And, just last year, we paid $72 million to those growers. So, from an economic impact, as far as the growers that contract with us and employees, it's a good amount. And, not only that, we buy corn. We buy corn for our feed mills.

As stated above, Plaintiffs also argue that Peco's counsel made improper statements during closing arguments. Plaintiffs set forth large portions of counsel's closing argument in their brief. The Court, for the sake of brevity, will quote only part of the statements with which Plaintiffs now take issue:

This is a very important case to the chicken industry. It's about what the chicken industry relies upon when contracting with growers. It's about what they can and cannot do in that reliance process.

If you rule -- the plaintiffs are trying to undermine the process by saying we can't rely on the DEQ permit. So, if we can't rely on the DEQ permit, Peco and other chicken processors -- there will be uncertainty in the business. There will be reluctance to contract with growers and that reluctance to contract with growers causes a loss of business and a loss of chickens; and that causes -- potentially causes a closing of a processing plant, one here and one there. And then the chicken industry as we know it has been changed.

Plaintiffs seek to challenge this reliance on MDEQ permits. Poultry processors are watching this case. And it's important to them. And the decision that you make is important to the industry in Mississippi. The agricultural industry in the state of Mississippi is the backbone of its economy. It has been for years. Chicken is the number one agricultural product in the state of Mississippi. That chicken that we're talking about is produced for worldwide consumption. And it's important to the communities, that the people are involved in where they

work.  It's important to the consumer who eats the product.  And they're important to chicken processors in Mississippi.

Our economy has been built on the backs of farmers like Cole [sic] and Skeels.  This case jeopardizes that relationship.

. . .

And I want to talk to you for just a second as someone who lives and resides in north Mississippi like you do. . .

I saw the devastation that the closure of the Bryan Foods plant in 2007 in West Point brought to that community.  I saw people's lives destroyed.  I've seen devastation in the Tupelo area and other areas of northeast Mississippi when the furniture industry began to close plants.  Many of these plaintiffs out here were affected by that.  What they're asking you to do, the unreasonable restrictions they're asking you to put on the poultry industry, could destroy that industry in this state.

Plaintiffs argue that Roddy Sanders' testimony, along with the statements made during closing argument by Peco's attorneys, resulted in unfair prejudice against them.  In short, the Court disagrees.

The Court first notes that Plaintiffs did not object at trial to Roddy Sanders' testimony or to the statements made by Peco's counsel during closing argument that allegedly caused them unfair prejudice.  Regarding the admission of Sanders' testimony, Federal Rule of Evidence 103 requires that a party claiming error as to the admission of evidence must "timely object[] or move to strike" and "state[] the specific ground, unless it was apparent from the context[.]"  FED. R. EVID. 103(a)(1)(A),(B).  Plaintiffs did not comply with this rule, and their failure to do so results in a waiver of their right to raise that issue now.  *See Johnson v. Watkins*, 803 F.Supp.2d 561, 585 (S.D. Miss. 2011) (holding that defendant's failure to object to the admission of evidence during trial resulted in a waiver of that argument in a new trial motion).

In their reply, Plaintiffs state that they did not waive their right to raise this issue because they asserted it in a pre-trial motion *in limine*.  In that motion, Plaintiffs requested that the Court

exclude "[e]vidence or commentary regarding the speculative impact of a judgment on the poultry industry[.]"  In its ruling on that motion, the Court stated that "[t]o the extent that Peco contests the motion, the Court finds that Plaintiffs have failed to provide sufficient specificity to warrant exclusion."  Thus, the Court rejected Plaintiffs' argument at that time because they had not met the applicable motion *in limine* standard that the evidence was inadmissible on all potential grounds.  And the Court finds that Plaintiffs' reliance on that motion—which was denied because it did not provide sufficient specificity—to preserve their argument now, after failing to object to the testimony at trial, is not well-taken.

While Federal Rule of Evidence 103(b) provides that a party need not renew an objection as to an issue "[o]nce the court definitively rules on the record[,]" the Court finds that its pre-trial ruling was not a definitive ruling on that issue.  In that order, the Court simply noted that Plaintiffs did not provide sufficient specificity for the Court to conclude that the evidence was "clearly inadmissible on all potential grounds."  Therefore, the Court now concludes that Plaintiffs' vague pre-trial motion was insufficient to preserve their argument; thus, they were required to state their objection to the testimony at trial.

Regarding the statements made during closing argument, the Fifth Circuit has made clear that the failure to raise an objection as to that issue at trial results in the party being "barred from urging the improper arguments as grounds for a new trial after the jury [returns] its verdict." *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988) (additional citations omitted).

Thus, the Court finds that Plaintiffs' failure to raise their objections to these issues at trial results in them being barred from raising them now. Nevertheless, the Court finds that even if Plaintiffs had not waived their right to raise this issue, they still would not prevail.[6]

Based upon a review of the applicable law, the utility of the conduct which allegedly caused the invasion of Plaintiffs' properties was a proper, relevant consideration for the jury's analysis. In fact, Jury Instruction 3 specifically instructed the jury on this point, stating in pertinent part:

> If you find that Cole's and Skeels intentionally caused an invasion, you must determine if the invasion was unreasonable. An intentional invasion of another's interest in the use and enjoyment of his or her property is unreasonable if (a) the gravity of the harm caused by the conduct is outweighed by *the utility of the conduct*; or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would make the continuation of the conduct not feasible.

(emphasis added). Thus, the utility of the conduct at issue was a legitimate consideration for the jury, and Peco's introduction of evidence on that point was not, in the Court's view, improper. Plaintiffs did not object to this instruction at trial nor did they object to the introduction of the evidence or the statements made by counsel during closing argument which they now claim prejudiced them so severely that a new trial is warranted. Their argument is not well-taken and is now squarely rejected by the Court.

*Argument suggesting that compliance with MDEQ regulations should immunize an operation:*

Plaintiffs next assert that Peco "engaged in improper argument suggesting to the jury that following MDEQ regulations should immunize an operation." To support this argument,

---

[6] The Court notes that even though Plaintiffs did not object, its decision to admit this evidence may still be reviewed for plain error. *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276 (5th Cir. 1998). Therefore, it will set forth its opinion as to why each of Plaintiffs' arguments is meritless.

Plaintiffs again emphasize Roddy Sanders' direct examination, specifically the following

portion:

> **Q.** Why is it important that Peco Foods be able to rely on the MDEQ permit process?
>
> **A.** Well, I think it would be several reasons. But, one of the main reasons, I think it would be certainty.
>
> **Q.** And why is certainty important in your business, Mr. Sanders?
>
> **A.** Well, as far as certainty, we got to know how many chickens that we're going to be able to process, how many chickens we're going to be able to sell. Obviously, how many birds that we need to place; how many houses we need to be able to meet that supply.
>
> **Q.** What will happen if you cannot rely on the certainty the permits provide you and your company?
>
> **A.** Well, we wouldn't be able to build any houses.
>
> **Q.** And, if you don't build any houses, what happens with the chickens for the processing plants?
>
> **A.** Well, they just won't be there anymore.
>
> **Q.** And you won't contract with the chicken farmers here because of the lack of certainty?
>
> **A.** That's correct.
>
> **Q.** And, if the processing plants can't get birds, what'll happen to them?
>
> **A.** They'll shut down.
>
> **Q.** Kind of like the way Bryan Foods did when the hog farm litigation was going on?
>
> **A.** Yes, sir.

Plaintiffs argue that "this elicited testimony is irrelevant to the claims or defenses in this

case and should not have been permitted by the Court." Further, Plaintiffs state that "counsel's

insistence that this litigation would close down the chicken plants the same way that Bryan

Foods closed down was highly prejudicial to Plaintiffs and was meant only to instill fear and defensiveness into the jury."

The Court finds telling the fact that Plaintiffs now argue that it should have excluded this testimony at trial, despite the fact that they raised no objection to it at that time. Additionally, the Court finds that the testimony did not unfairly prejudice Plaintiffs. In fact, though Peco did elicit testimony concerning the MDEQ permit, the Court specifically instructed the jury that obtaining an MDEQ permit and complying with regulations did not immunize Peco's operations. Specifically, Jury Instruction 3 stated that "[u]nder Mississippi law, even a lawful business may become a nuisance by interfering with another person's use and enjoyment of his or her property. Stated differently, compliance with rules and regulations does not prevent Defendant Peco from being held liable for nuisance." This instruction accurately reflects Mississippi law on this point. *See Alfred Jacobshagen Co. v. Dockery*, 139 So.2d 632, 634 (Miss. 1962) ("A business, although in itself lawful, which impregnates the atmosphere with disagreeable and offensive odors and stenches, may become a nuisance to those occupying property in the vicinity, where such obnoxious smells result in a material injury to such owners."). Thus, the Court properly instructed the jury on the law concerning the intersection between a lawful business and tort law—specifically, that compliance with the MDEQ regulations did not prevent nuisance and/or negligence claims. And "[a] jury is presumed to follow its instructions[.]" *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 876 (5th Cir. 2013) (quoting *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000)).

Moreover, Plaintiffs were given ample opportunity at trial to emphasize to the jury that Peco's compliance with MDEQ regulations did not immunize it from tort liability. In fact, Middleton specifically informed the jury of this point in his own closing argument during his

rebuttal. That fact, along with the facts that Plaintiffs did not object at trial to the subject

testimony and that the Court properly instructed the jury on the relevant law, cripples Plaintiffs'

argument that they suffered unfair prejudice. In short, the Court finds Plaintiffs' argument to be

without merit.

*Statements by Peco's counsel during closing argument:*

Plaintiffs next argue that Carmody's final statement during closing argument was "highly

inflammatory" and provides a basis for a new trial. Carmody's statement was:

> Mr. Middleton has asked for $11 million. You shouldn't award $11 million. This
> lawsuit has been manufactured by the lawyers in this case. It's the lawyers
> speaking. And they only want damages.

As with other arguments raised in its motion, Plaintiffs did not object to this statement at

trial. However, they now argue that the Court should grant them a new trial based upon the

prejudicial effect it had on them. This appears, in the Court's view, to be nothing more than a

desperate attempt by Plaintiffs to obtain a second opportunity to litigate their claims in light of an

unfavorable jury verdict.

"Courts usually permit reasonable latitude in counsel's final arguments to the jury.

Proficiency in jury argument, an ability to sway doubtful minds, a method of convincing others

of the rightness of one's positions are important not only to successful advocacy but also to

effective representation of the client's interests." *Edwards v. Sears, Roebuck and Co.*, 512 F.2d

276, 283 (5th Cir. 1975). Moreover, the Fifth Circuit has recently held that "[a] motion for new

trial premised on improper arguments by counsel should *only* be granted when 'improper closing

argument irreparably prejudices a jury verdict or if a jury fails to follow instructions.'" *Vital v.

Nat'l Oilwell Varco, LP*, 2017 WL 1380557, *2 (5th Cir. Apr. 17, 2017) (quoting *Baisden v. I'm

Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012)) (emphasis added). Importantly, "[i]n

determining the effect of statements made during closing argument, [courts] consider the record as a whole and not merely isolated remarks." *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014) (quoting *Daniel v. Ergon, Inc.*, 892 F.2d 403, 411 (5th Cir. 1990)).

Put simply, Carmody's comments do not entitle Plaintiffs to a new trial. The trial of this matter lasted over two weeks. The jury heard testimony from 70 witnesses, and over 400 exhibits were admitted into evidence. Considering the record as a whole, the Court finds that Plaintiffs' present attempt to emphasize a single statement made by opposing counsel during closing argument and the effect it had on the jury as a basis for a new trial is an exaggeration and not well-taken. The Court also finds telling that Plaintiffs did not object to this statement at trial. Moreover, the Court does not view the statements itself as "highly inflammatory" and worthy of a new trial, as Plaintiffs suggest.

Ultimately, the Court finds Plaintiffs' position to be based on nothing more than dissatisfaction with the conclusion the jury reached. Plaintiffs were given an adequate opportunity to litigate their claims and simply did not sufficiently persuade the jury. They did not suffer unfair prejudice. This argument is therefore, like each of their previous arguments, rejected by the Court.

### Plaintiffs' Alternative Motion for Judgment as a Matter of Law

As to their argument for judgment as a matter of law, Plaintiffs stated that for the same reasons provided in their argument for a new trial, they "submit that judgment should be entered in their favor notwithstanding the jury's verdict in this matter due to the overwhelming weight of the evidence in this case." Stated concisely, the Court disagrees.

"A motion for judgment as a matter of law (previously, motion for directed verdict or J.N.O.V.) in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 405 (5th Cir. 2007) (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)). "When evaluating the sufficiency of the evidence, we view all evidence and draw all reasonable inferences in the light most favorable to the verdict." *Id.* "A judgment notwithstanding the verdict . . . should be granted by the trial court *only* when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict, viewing the facts in the light most favorable to the party against whom the motion is made, and giving that party the advantage of every fair and reasonable inference which the evidence justifies." *Songcharoen v. Plastic & Hand Surgery Assocs., PLLC*, 2013 WL 12123524, *2 (S.D. Miss. Apr. 11, 2013) (quoting *Spuler v. Pickar*, 958 F.2d 103, 105 (5th Cir. 1992)) (emphasis added); *see also Baisden*, 693 F.3d at 498 ("A district court must deny a motion for judgment as a matter of law unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.") (citations omitted).

*Discussion*

On this point, Plaintiffs essentially reiterate the arguments they made in their request for a new trial. Their entire argument for judgment as a matter of law states:

> For all the reasons stated above, Plaintiffs submit that judgment should be entered in their favor notwithstanding the jury's verdict in this matter due to the overwhelming weight of the evidence in this case. . . Here, there is no legally sufficient evidentiary basis for the jury's verdict particularly considering the prejudicial effect of the evidence that was submitted by Defendant in this defense of this case. That is to say, the jury indeed rendered a verdict in favor of

Defendant on all counts; however, the likely basis for that verdict was derived from evidence that had no bearing on the issues in the case and deliberately misled the jury. Such evidence is not legally sufficient to support a verdict in Defendant's favor. The only rational verdict or judgment to be rendered in this case was in favor of Plaintiffs and Plaintiffs ask this Court to remedy the substantial injustice worked by the jury's verdict in this case by entering judgment in Plaintiffs' favor.

The Court finds that Plaintiffs' argument, like their arguments for a new trial, comes up short. First, the Court notes that Plaintiffs failed to move for judgment as a matter of law under Rule 50(a) at trial. The Fifth Circuit has made clear that "[i]f a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001); *see also OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) ("Any argument made in a renewed motion for judgment as a matter of law under Rule 50(b) must have been previously made in a motion for judgment as a matter of law under Rule 50(a)."). Relying on this authority, the Court finds that Plaintiffs waived their right to assert a post-verdict motion for judgment as a matter of law when they failed to raise this issue prior to the case being submitted to the jury.[7]

However, even if Plaintiffs had not waived their right to raise this issue, their argument is not compelling. A party moving for post-verdict judgment as a matter of law bears a heavy burden. *See Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000) ("If reasonable persons could differ in their interpretation of the evidence, then the motion should be denied."). The Court finds that Plaintiffs cannot meet this burden. While there certainly was a

---

[7]   The Court finds telling the fact that Peco raised this argument in its response, providing authority to support its position, and Plaintiffs failed to even address it in their reply.

large amount of evidence and testimony elicited in Plaintiffs' favor, Peco rebutted this evidence with its own evidence and testimony.

Ultimately, credible evidence was introduced in each side's favor, and, in the Court's view, the jury could have reasonably found for either side. Accordingly, the Court finds that Plaintiffs would not be entitled to judgment as a matter of law, even if they had not waived this argument. There was a sufficient evidentiary basis for the jury to rule in Peco's favor, and Plaintiffs' alternative motion for judgment as a matter of law will be denied.

**Conclusion**

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' *Motion for New Trial or Judgment as a Matter of Law* [484] is DENIED.

SO ORDERED, this the 5th day of June, 2017.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**